IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ADAM BOGEMA,      (03)<br><br>Defendant. | CR. NO. 16-00451 JMS-03<br><br>ORDER DENYING MOTION FOR COMPASSIONATE RELEASE OR A RECOMMENDATION FOR HOME CONFINEMENT, ECF NO 286 |

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE OR A RECOMMENDATION FOR HOME CONFINEMENT, ECF NO 286

## I.  INTRODUCTION

Defendant Adam Bogema ("Defendant") moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from USP Lompoc ("Lompoc"), based on several pre-existing medical conditions and the ongoing COVID-19 pandemic.  The court determines that Defendant has failed to show extraordinary and compelling reasons to warrant release, and, even if he had, the court would deny his Motion based on a consideration of the applicable 18 U.S.C. § 3553(a) factors.  Thus, for the following reasons, Defendant's Motion is DENIED.

## II. **BACKGROUND**

Defendant is a 43-year-old inmate incarcerated at Lompoc with a projected release date of October 26, 2037.  *See* https://www.bop.gov/inmateloc/ (last visited October 20, 2020).

On September 22, 2017, Defendant pled guilty without a plea agreement to one count of conspiracy to distribute, and possess with intent to distribute, 50 grams or more of methamphetamine (count 1), one count of attempted possession with intent to distribute 50 grams or more of a mixture or substance containing a detectible amount of methamphetamine (count 2), and two counts of attempted possession with intent to distribute 50 grams or more of methamphetamine (counts 3 and 4).  *See* ECF Nos. 202 & 264; *see also* Amended Presentence Investigation Report ("PSR") ¶ 12, ECF No. 263 at PageID # 1488-89.[1]  On June 12, 2018, Defendant was sentenced to a total term of 300 months imprisonment, and a total term of five years of supervised release.  ECF Nos. 262

---

[1]  Defendant earlier had entered a plea of guilty to count 1 pursuant to a plea agreement, but the court permitted him to withdraw that plea after he obtained new counsel.  Defendant then entered a plea of guilty to all four counts charged against him, without a plea agreement.  *See* ECF Nos. 125, 157, 200 & 202.

& 264.[2]  On June 8, 2020, the Ninth Circuit affirmed the sentence in a memorandum disposition.  ECF No. 282.

Defendant submitted a request for compassionate release to Lompoc's Warden on June 14, 2020.  *See* ECF No. 286-10 at PageID # 1996.  It appears that the Warden has not responded to that request.  *See* ECF No. 286 at PageID # 1664.  On August 28, 2020, Defendant filed the instant Motion seeking a reduction of Defendant's sentence to time served or in the alternative for the court to recommend to the Bureau of Prisons ("BOP") that Defendant be released on home confinement.  *Id*. at PageID # 1669.  Defendant supplemented his Motion on September 28, 2020 with a Report of Dr. Homer Venters in relation to a pending civil action in the Central District of California.  ECF No. 299-1.  On October 13, 2020, the Government filed its Response.  ECF No. 300.

The court decides the motion without a hearing pursuant to Local Rule 7.1(c).

---

[2]  Defendant's total offense level 35, Criminal History Category VI, resulted in an advisory United States Sentencing Guideline range of 292 to 365 months incarceration.  *See* ECF No. 265 at PageID # 1542.  Further, the court ordered that Defendant's sentence run concurrent to any sentences imposed in pending cases in Los Angeles Superior Court; Clark County, Nevada Justice Court; and the Central District of California.  ECF No. 264 at PageID # 1537.  On August 15, 2019, Defendant was sentenced in the Central District of California to a concurrent 204 months in custody based on his plea of guilty to conspiracy to possess with intent to distribute methamphetamine.  ECF No. 286-3.

## III. <u>DISCUSSION</u>

**A.    Legal Standard**

Defendant moves for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A), as amended by the First Step Act of 2018, which provides as

relevant:

> [T]he court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days
> from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the
> term of imprisonment . . . after considering the factors set
> forth in [18 U.S.C.] section 3553(a) to the extent that
> they are applicable, if it finds that—
>
>         (i) extraordinary and compelling reasons warrant
> such a reduction;
> . . . .
> and that such a reduction is consistent with applicable
> policy statements issued by the Sentencing
> Commission[.]

Thus, the court may reduce Defendant's sentence if: (1) Defendant

has exhausted the required administrative remedies; (2) Defendant has shown that

"extraordinary and compelling reasons" warrant the reduction; and (3) the

reduction is consistent with applicable Sentencing Commission's policy

statements.  Here, both parties agree that Defendant has exhausted his

administrative remedies.  *See* ECF No. 286 at PageID # 1664; ECF No. 300 at PageID # 2339-40.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, provides, as relevant to Defendant, that the court may grant a motion for compassionate release only if, after consideration of the applicable § 3553(a) factors, the court determines that extraordinary and compelling reasons exist to warrant a sentence reduction, the defendant is not a danger to another person or to the community, and a sentence reduction is consistent with the policy statement.

Guideline § 1B1.13 provides three specific examples of extraordinary and compelling reasons for compassionate release—the defendant's terminal medical condition, deterioration of health due to advanced age, and extenuating family circumstances—along with a fourth, catch-all provision granting discretion to the Bureau of Prisons ("BOP") Director to determine whether other extraordinary and compelling reasons exist.  *See* Guideline § 1B1.13 n.1(A)-(D). In a detailed analysis, this court previously determined that the "discretion to determine whether 'other' extraordinary and compelling reasons exist granted by [Guideline § 1B1.13 n.1(D)] to the BOP Director applies equally to the court when ruling on motions for compassionate release."  *United States v. Hernandez*, 2020

WL 3453839, at *4 (D. Haw. June 24, 2020); *see also United States v. Brooker*,

__F.3d__, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020) ("[T]he First Step Act

freed district courts to consider the full slate of extraordinary and compelling

reasons that an imprisoned person might bring before them in motions for

compassionate release.").  The court incorporates its *Hernandez* analysis here.

## B.    Extraordinary and Compelling Reasons Do Not Warrant Release

Defendant bears the burden to establish extraordinary and compelling

reasons that warrant compassionate release.  *See, e.g.*, *United States v. Bolden*,

2020 WL 4286820, at *3 (W.D. Wash. July 27, 2020); *United States v. Proudfoot*,

2020 WL 4284128, at *4 (D. Or. July 27, 2020).  Here, Defendant contends that he

should be released from custody because: (1) he is at increased risk should he

contract COVID-19 because he suffers from obesity, chronic asthma,[3]

hypertension,[4] and obstructive sleep apnea (requiring a CPAP unit for sleep), and

---

[3] Defendant's BOP medical records do not reflect any diagnosis or treatment for asthma. ECF No. 286-13.  In fact, in several places the records state "Hx of Asthma: No."  *See, e.g.*, ECF No. 286-13 at Page ID ## 2190, 2249.  Nonetheless, in his Motion Defendant states that "[a]s the PSR noted, [Defendant] has had chronic asthma since childhood."  ECF No. 286 at PageID # 1661.  That isn't what the PSR says—instead, the PSR states that Defendant's "mother reported a childhood history of chronic asthma, during which he was frequently hospitalized . . . ."  *See* PSR ¶ 94, ECF No. 263 at PageID # 1512.  Regardless, Defendant now states in a declaration that he has suffered from severe asthma since birth.  ECF No. 286-11 at PageID # 2001.  Given this record, the court accepts that Defendant has asthma, although it does not appear that he has suffered from the symptoms of asthma while in BOP custody.

has been diagnosed as suffering from bipolar disorder and ADHD; and (2) Lompoc "has one of the worst COVID-19 outbreaks in the federal prison system."  ECF No. 286 at PageID ## 1660-64.  Defendant also points out that he has completed various courses while in BOP custody, and proposes a release plan.  *Id.* at PageID # 1665; ECF No. 286-12 at PageID # 2005.  The court addresses each argument in turn.

The court agrees that Defendant has underlying medical conditions that place him or might place him at an increased risk for severe illness from COVID-19.  According to the Centers for Disease Control and Prevention ("CDC"), individuals with "[o]besity (body mass index [BMI] 30 kg/m$^2$ or higher)" fall into a high-risk category.  *See* https://www.cdc.gov/coronavirus/2019-ncov/ need-extra-precautions/people-with-medical-conditions.html (last visited October 20, 2020).  Defendant's BMI is in the 31.0-31.9 range.  *See*, *e.g*., ECF No. 286-13 at Page ID ## 2155, 2188, 2248.  Further, an individual with moderate to severe asthma or hypertension "might be at an increased risk."  *See* https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions

---

[4]  The BOP medical records suggest that Defendant has hypertension and was prescribed Lisinopril, but that prescription was discontinued because Defendant was non-complaint.  *See* ECF No. 286-13 at PageID ## 2219, 2248.

.html (last visited October 20, 2020).  In short, Defendant's pre-existing medical

conditions place him at an increased risk should he contract COVID-19.

On the other hand, at 43 years old, Defendant is not in a high-risk age

group.  As stated by the CDC:

> As you get older, your risk for severe illness from
> COVID-19 increases. For example, people in their
> 50s are at higher risk for severe illness than people
> in their 40s. Similarly, people in their 60s or 70s
> are, in general, at higher risk for severe illness than
> people in their 50s. The greatest risk for severe
> illness from COVID-19 is among those aged 85 or
> older.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-

adults.html (last visited October 20, 2020).

Next, although Lompoc[5] certainly was a COVID-19 "hot spot" several

months ago, the same is not true at the present time.  BOP reports that 846 inmates

have been tested for COVID-19 at Lompoc, and 145 tests have returned positive.

*See* https://www.bop.gov/coronavirus/(COVID-19 resource page) (last visited

October 20, 2020).  But BOP currently reports that "confirmed active cases" are

---

[5] Lompoc USP presently houses 896 inmates.  *See* bop.gov/locations/institutions/lom/
(last visited October 20, 2020).

limited to no inmates and four staff members.  *Id.*  Thus, Lompoc simply does not pose the threat it did several months ago.[6]

The court finds that based on the existing evidence, Defendant has failed to demonstrate that extraordinary and compelling reasons warrant compassionate release.  Although Defendant's medical conditions place him at a higher risk for complications from COVID-19, Defendant is only 43 years old and

---

[6] The court has carefully considered Dr. Venters' report and findings.  ECF No. 299-1.  The report describes Lompoc's response to the "unprecedented challenge" of COVID-19 as "exhibit[ing] both significant strengths and serious deficiencies" and goes on to state that "[o]verall, the COVID-19 response at . . . Lompoc is characterized by some evidence-based strategies being superimposed on a grossly inadequate system of health care."  *Id.* ¶ 39, PageID # 2327.  The report predicts that current shortcomings in Lompac's COVID-19 response are likely to increase the risk of inmates contracting COVID-19 and anticipates those who do become ill are likely to face higher risks of serious illness and death.  *Id.* ¶ 41, PageID # 2328.  These concerns around the "health system" at Lompoc "create a strong mandate for more vigorous consideration and processing of compassionate release applications."  *Id.* ¶ 42, PageID # 2329.

While the court is sympathetic to the increased risk facing incarcerated individuals during the pandemic, the present conditions at Lompac do not, at least absent evidence of more serious health complications affecting Defendant, provide a basis for his compassionate release.  First, it is unclear from the report that conditions at Lompac are materially worse than at other BOP facilities.  Indeed, while access to paper towels is described as worse than at other facilities, the report also indicates that Lompac's creation of a dedicated hospital unit to care for COVID-19 patients is "superior to any other effort [Venters] ha[s] seen in [his] 12 facility COVID-19 inspections."  *Id.* ¶ 36, PageID # 2318.  Moreover, the quantitative evidence before the court demonstrates that COVID-19 at Lompoc is, at present, relatively well-contained, with only four active cases among staff and no active cases among inmates.  In short, although the court certainly does not discount the problems facing Lompoc at the present time, Defendant has failed to meet his burden to demonstrate extraordinary and compelling reasons to justify his release given his age and health conditions.

the number of COVID-19 cases at Lompoc has dropped dramatically over the past few months.

**C.      Section 3553(a) Factors**

Even if Defendant had demonstrated that extraordinary and compelling reasons exist to justify compassionate release, the court would deny the motion based on a consideration of the applicable § 3553(a) factors.

As relevant to this case, the § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant;[7] and (2) the need for the sentence imposed "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]"  18 U.S.C. § 3553(a)(1)-(2).  And under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).

---

[7] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody.  *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

Defendant trafficked in substantial quantities of methamphetamine. *See* PSR ¶¶ 15-34, ECF No. 263 at PageID ## 1490-94.  In total, Defendant was held responsible for 883 grams of 99% pure methamphetamine and 1,831 grams of generic methamphetamine.  *Id.* ¶ 34, ECF No. 263 at PageID # 1494.[8]  Based on his leadership role in the offense, in that Defendant controlled the distribution and he was exercising decision-making authority, he also received a four-level upward adjustment under the Guidelines.  *See id.* ¶ 48, ECF No. 263 at PageID # 1496; ECF No. 271 at PageID # 1588.  Further, even though Defendant was detained on December 17, 2015 after the controlled delivery of a parcel containing pseudo-methamphetamine, he continued to deal methamphetamine the following week. PSR ¶¶ 21, 25, ECF No. 263 at PageID ## 1491, 1492.

Further, Defendant has a long and troubling criminal history.  *Id.* ¶¶ 56-71, ECF No. 263 at PageID ## 1497-1506.  Aside from the instant conviction and his recent conviction in the Central District of California, as an adult, Defendant has been convicted of the following offenses, among others: possess/manufacture/sell dangerous weapon/etc. in 1995; inflict corporal injury

---

[8]  The conspiracy charge in this case spanned from January 2015 through May 2016. ECF No. 16.  The indictment in the Central District of California, *see supra* footnote 2, charged Defendant with distributing multiple kilograms of methamphetamine to an individual in Missouri during the same general time period.  PSR ¶ 76, ECF No. 263 at PageID # 1507-08.

spouse/cohabitant in 1997; threaten crime with intent to terrorize and stalking in 1999; transport/etc. controlled substance and give false information to peace officer in 2000; felon/etc. possess firearm in 2002 and 2010; transport/etc. controlled substance and false ID to specific peace officers in 2004; possession of controlled substance paraphernalia in 2007; threaten crime with intent to terrorize and prevent/dissuade witness with threat/force in 2010; take vehicle without owner consent in 2010; and make/etc. equipment: fake access card in 2016.  Further, Defendant consistently had either probation or parole revoked for these convictions.  *Id.* ¶¶ 56-82 ECF No. 263 at PageID ## 1497-1506.  In total, at the time of sentencing for his most recent offenses, Defendant had a criminal history score of 22, resulting in a criminal history category VI.[9]  *Id.* ¶ 72, ECF No. 263 at PageID # 1506.

Further, Defendant still has the vast majority of his sentence to serve—he is not scheduled for release from custody until October 26, 2037, over

---

[9]  The criminal history score of 22 is "off the chart."  A defendant is placed in the maximum criminal history category VI with 13 or more criminal history points.  *See* United States Sentencing Commission, Guideline Sentencing Table (1987), available at: https://www.ussc.gov/guidelines/2018-guidelines-manual/2018-chapter-5 (last visited October 20, 2020).

17 years from now.  *See* https://www.bop.gov/inmateloc/ (last visited October 20, 2020).[10]

In mitigation, Defendant points out that he has completed a number of programs while in custody, that he has maintained strong family and community support, and that he has a release plan that mitigates any danger that he might pose. *See* ECF Nos. 286, 286-12.

Considering all of the § 3553(a) factors, including the offense conduct, Defendant's criminal history, Defendant's post-offense conduct, and the time remaining on Defendant's sentence, reducing Defendant's sentence to time served would severely undermine the goals of sentencing set forth in § 3553(a)(2).

## IV.  <u>CONCLUSION</u>

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release, and, even if he did, the court would deny the motion based on the relevant § 3553(a) factors.

---

[10]  When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release.  *See e.g.*, *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020); *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, ___ F. Supp. 3d ___, 2020 WL 2307315, at *6 (E.D. Pa. May 8, 2020); *United States v. Farmer*, 2020 WL 4057550, at *2 (N.D. Ohio July 20, 2020); *cf. United States v. Moskop*, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

Further, for all the reasons set forth above, the court declines to recommend to the BOP that Defendant be placed in home custody.

For the foregoing reasons, Defendant's Motion for Compassionate Release or a Recommendation for Home Confinement, ECF No. 286, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 20, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Bogema*, Cr. No. 16-00451 JMS-03, Order Denying Motion for Compassionate Release or a Recommendation for Home Confinement, ECF No. 286